1

2

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

10                  EASTERN DISTRICT OF CALIFORNIA

11

12                         ----oo0oo----

13   BOB WATSON,
                                  NO. CIV. S-06-1549 FCD DAD
14           Plaintiff,

15       v.                       MEMORANDUM AND ORDER

16   YOLO COUNTY FLOOD CONTROL AND
     WATER CONSERVATION DISTRICT,
17
             Defendant.
18

19                         ----oo0oo----

20       Plaintiff Bob Watson ("Watson" or "plaintiff") brings this

21   action against defendant Yolo County Flood Control and Water

22   Conservation District (the "District"), claiming violations of

23   the Fair Labor Standards Act ("FLSA") (29 U.S.C. § 201, et seq.).

24   Specifically, plaintiff seeks damages, in the form of allegedly

25   unpaid minimum wages and overtime wages, for his work as a

26   damtender at the Indian Valley Dam at Indian Valley Reservoir in

27   Yolo County, California.  Plaintiff also seeks equitable remedies

28   and unpaid benefits based upon the allegedly uncompensated work

                                  1

hours, which would have increased plaintiff's benefits under the

District's Money Purchase Pension Plan.

This matter comes before the court on defendant's motion for

summary judgment, or in the alternative, summary adjudication.

Plaintiff opposes the motion and also moves for additional

discovery pursuant to Federal Rule of Civil Procedure 56(f).  For

the reasons discussed below,[1] defendants' motion is GRANTED in

part and DENIED in part, and plaintiff's motion for additional

discovery is DENIED.

## BACKGROUND[2]

Plaintiff Watson has been employed as a damtender by

defendant District at the Indian Valley Reservoir, located in

Lake County, since 1994.  (DUF ¶ 1).  The District controls the

reservoir, Cache Creek, Clear Lake, and has water rights for

storage and diversion of water from the North Fork of Cache Creek

and Cache Creek.  (DUF ¶ 2).  In addition to supplying water for

---

[1]    Because oral argument will not be of material
assistance, the court orders these matters submitted on the
briefs.  E.D. Cal. Local Rule 78-230(h).

[2]    Unless otherwise noted, the facts recited herein are
undisputed.  (See Pl.'s Response to Def.'s Stmt. of
Uncontroverted Material Facts ("PUF"), filed Sept. 6, 2007;
Def.'s Response to Pl.'s Stmt. of Undisputed Facts ("DUF"), filed
Sept. 14, 2007).  Where the facts are disputed, the court
recounts plaintiff's version of the facts.

Defendant objects to various evidence presented by plaintiff
in support of his opposition.  Much of the evidence objected to
is immaterial to the court's analysis of the summary judgment
motion.  To the extent that the evidence is relevant, the court
finds that defendant's objections are without merit.
Specifically, defendant makes multiple objections based upon the
assertion that plaintiff's declaration is inconsistent with his
deposition testimony.  Unless otherwise noted, the court's review
of plaintiff's deposition does not reveal statements directly
contrary to relevant statements made in his declaration.

2

irrigation or drinking water, the Indian Valley Reservoir is used for recreation, fishing, boating, flood control, and storm drainage.  (DUF ¶ 31).  The District also operates a hydroelectric plant and sells the power to PG&E.  (DUF ¶ 33).  Plaintiff's duties are to maintain and operate the Indian Valley Reservoir dam, the hydroelectric plant, the recreational facilities, and the campground.  (DUF ¶ 2).

Plaintiff's work day starts at about 5:00 a.m., when he visually inspects the gauges at the reservoir and the stream, measures water level, and records the readings.  (DUF ¶ 3).  This takes approximately fifteen to thirty minutes every morning, including the time it takes to travel to the dam from the camp office and from the dam to the stream.  (DUF ¶ 3).  Plaintiff then goes to the hydroelectric plant, where he inspects the three hydroelectric turbines and takes readings for amperage, temperature, and voltage.  This takes approximately forty-five minutes.  (DUF ¶ 4).  After this is completed, plaintiff goes to the water treatment plant, which provides potable water for the public, and visually inspects gauges, takes readings, and adjusts chemicals.  This takes approximately thirty minutes.  (DUF ¶ 5).  Plaintiff then goes back to the camp office, where he typically finds campers or fisherman waiting for him to either check in or to find out about fishing conditions.  (DUF ¶ 6).  Defendant contends that this is not typical because there are a significant number of days during the year where there are no campers at the facility.  (DUF ¶ 6).  Plaintiff then calls defendant District at about 8:00 a.m. to give them the water level readings.  (DUF ¶ 7; PUF ¶ 10).  The District calls plaintiff at approximately 11:00

1  a.m. if adjustment to the dam gates are necessary to facilitate
2  the delivery of water.  (PUF ¶ 10).

3      Plaintiff then starts his duties maintaining the campground.
4  (DUF ¶ 8).  Plaintiff usually makes a patrol through the
5  campsites to determine what needs to be done that day, which is
6  usually garbage clean up.  (DUF ¶ 8).  Twice a week, plaintiff
7  hauls the garbage collected from the campsite to the landfill,
8  which takes approximately four hours.  (DUF ¶ 9).  Watson also
9  cuts back brush and trees to maintain the integrity of the camp
10 site, cleans out the fire pits, keeps the roads to the campground
11 clear, and repairs and digs ditches for the water lines.  (DUF ¶
12 10).  Plaintiff also maintains and grades the dirt roads from the
13 camp office to the water treatment plant, the dam, the hydro
14 facility, and the stream.  (DUF ¶¶ 10, 13).  Plaintiff's job also
15 includes maintaining the boat ramp.  (DUF ¶ 16).

16     Plaintiff asserts that while performing his duties, he is
17 often interrupted by campers, fishermen, or day trippers who have
18 questions or needs, such as changing flat tires, welding boat
19 trailers, or charging car batteries.  (DUF ¶ 11).  Watson also
20 has to leave his tasks to check in the campers.  (DUF ¶ 12).
21 Moreover, all terrain vehicles are not permitted in the
22 campground area, and plaintiff was continually stopping his other
23 tasks to enforce this policy.  (DUF ¶ 14).  Throughout the day,
24 plaintiff has to warn campers not to swim near the dam spillway;
25 on one occasion, he participated in a rescue.  (DUF ¶ 15).  Over
26 the last four years, plaintiff assisted with sinking boats.  (DUF
27 ¶ 17).  Typically, plaintiff ends his physical work at about 4:00
28 or 5:00 p.m.  (DUF ¶ 18).  However, he continues to check in

4

campers and escort campers to their campsites.  (DUF ¶¶ 18-19).
The campground entrance is open 24 hours per day, seven days per
week, and there is no limit to the time of day that campers check
in or out of the campground.  (DUF ¶ 20).  Again, defendant
asserts that these interruptions and duties do not occur often
because there are a significant number of days during the year
where there are no campers at the facility.  (DUF ¶¶ 11, 14-15,
18).  When no campers are present, plaintiff does not have to
collect fees or deal with other camper related issues.  (PUF ¶
52).

During the time period relevant to this lawsuit, plaintiff
operated the store inside the office and retained the profits
from the store.  (DUF ¶ 21; PUF ¶ 50).  He kept the camp office
and store open until 10:00 or 11:00 p.m. at night, even if no
campers were present.  (DUF ¶ 22; PUF ¶ 51).  At about 11:00 p.m.
every evening, plaintiff would telephone PG&E, the company to
whom defendant sold electric power, and give them the reading
from the hydro plant.  (DUF ¶ 23).  This often would take ten to
fifteen minutes because he had to get a telephone signal.  (DUF ¶
23).

Since plaintiff began his employment with defendant, there
has been no written employment contract for plaintiff.  (DUF ¶
49).  At the start of his employment, plaintiff reviewed the
contract between James Mitchell, the prior dam tender, and the
District and made few changes.  (PUF ¶ 36).  Plaintiff was paid a
salary for his position.  (DUF ¶ 57).  Plaintiff was required to
be on the Indian Valley Reservoir premises every day, 365 days
per year, unless he took vacation or sick leave.  (DUF ¶ 58).  He

did not have set days off.  (DUF ¶ 59).  Plaintiff was expected
to provide constant supervision at the recreational facility,
including providing emergency response for injuries to the
public.  (DUF ¶¶ 63-64).  Plaintiff told other employees of
defendant District that he works seven days per week and in
excess of eight hours per day.  (DUF ¶ 59).  Plaintiff asserts
that he was consistently working from early morning through late
evening.  (DUF ¶ 99).  From February 1, 2002 through January 1,
2007, plaintiff left the Indian Valley Reservoir less than once
per week, only in the late afternoon or evening.  (DUF ¶ 81).
Prior to his wife's death, she would take care of the campers
while he was off premises.  (DUF ¶ 81).

From January 1, 2003 through January 1, 2007, Christy Barton
("Barton"), the Assistant General Manager of the District, came
to the Indian Valley Reservoir approximately four times.  (DUF ¶
102).  Barton and plaintiff never discussed the number of hours
per week that he works.  (DUF ¶ 102).  In early 2007, Tim
O'Halloran ("O'Halloran"), General Manager of defendant District
since 2003, told plaintiff not to exceed working forty hours per
week.  (DUF ¶ 56).

Defendant asserts that plaintiff did not have a written
contract at least in part because Watson stated he was happy with
the way things were.  (PUF ¶ 40).  Defendant contends that based
upon the workload for the damtender at the Indian Valley
Reservoir, it was the District's understanding that the position
required less than forty hours per week to perform.  (PUF ¶ 47).
Specifically, defendant contends that plaintiff's duties could be
completed in four to six hours and that hourly employees who

6

filled in for Watson did not require overtime to complete the damtender duties.  (PUF ¶ 69).

In November 2003, the District hired a consultant, CPS Human Resource Services, to evaluate their employment practices and personnel operations and to prepare a report.  (DUF ¶ 105). Barton and O'Halloran received copies of the report.  (DUF ¶ 107).  The report states, "I have a concern about the two contract staff and whether they are truly FLSA exempt."  (DUF ¶ 109).  The report further provides under "Section VIII – Contract Employees":

> The District currently has two employees who typically work under contract.  One employee is currently without a contract.  Further, both employees are stationed at remote sites, without regular supervision, work long hours during the season, receive District provided housing and vehicle, have considerable flexibility regarding scheduling of work, and employ their spouses to assist with work.  Both positions need to be evaluated closely for FLSA exemptions and appropriateness of total compensation and overtime liability.  The employment contract was not provided for review, and legal review is advisable prior to entering into a new contract.

Ex. A to Decl. of Karen Tynan ("Tynan Decl."), filed Sept. 6, 2007, at 16; DUF ¶ 110).  The District never adopted any of the recommendations.  (DUF ¶ 113).

### STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970).

Under summary judgment practice, the moving party

[A]lways bears the initial responsibility of informing

7

> the district court of the basis of its motion, and
> identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions
> on file together with the affidavits, if any," which it
> believes demonstrate the absence of a genuine issue of
> material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the

nonmoving party will bear the burden of proof at trial on a

dispositive issue, a summary judgment motion may properly be made

in reliance solely on the 'pleadings, depositions, answers to

interrogatories, and admissions on file.'"   Id. at 324.   Indeed,

summary judgment should be entered against a party who fails to

make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party

will bear the burden of proof at trial.   Id. at 322.   In such a

circumstance, summary judgment should be granted, "so long as

whatever is before the district court demonstrates that the

standard for entry of summary judgment, as set forth in Rule

56(c), is satisfied."   Id. at 323.

    If the moving party meets its initial responsibility, the

burden then shifts to the opposing party to establish that a

genuine issue as to any material fact actually does exist.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

253, 288-289 (1968).   In attempting to establish the existence of

this factual dispute, the opposing party may not rely upon the

denials of its pleadings, but is required to tender evidence of

specific facts in the form of affidavits, and/or admissible

discovery material, in support of its contention that the dispute

exists.   Fed. R. Civ. P. 56(e).   The opposing party must

8

1  demonstrate that the fact in contention is material, i.e., a fact

2  that might affect the outcome of the suit under the governing

3  law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986),

4  and that the dispute is genuine, i.e., the evidence is such that

5  a reasonable jury could return a verdict for the nonmoving party,

6  <u>Id.</u> at 251-52.

7      In the endeavor to establish the existence of a factual

8  dispute, the opposing party need not establish a material issue

9  of fact conclusively in its favor.  It is sufficient that "the

10  claimed factual dispute be shown to require a jury or judge to

11  resolve the parties' differing versions of the truth at trial."

12  <u>First Nat'l Bank</u>, 391 U.S. at 289.  Thus, the "purpose of summary

13  judgment is to 'pierce the pleadings and to assess the proof in

14  order to see whether there is a genuine need for trial.'"

15  <u>Matsushita</u>, 475 U.S. at 587 (quoting Rule 56(e) advisory

16  committee's note on 1963 amendments).

17      Finally, to demonstrate a genuine issue, the opposing party

18  "must do more than simply show that there is some metaphysical

19  doubt as to the material facts. . . . Where the record taken as a

20  whole could not lead a rational trier of fact to find for the

21  nonmoving party, there is no 'genuine issue for trial.'"

22  <u>Matsushita</u>, 475 U.S. at 586-87, 106 S. Ct. at 1356.

23                          **ANALYSIS**

24      On July, 12, 2007, plaintiff filed a complaint for damages

25  in this action, alleging (1) failure to pay overtime in violation

26  of the FLSA; (2) failure to pay minimum wage in violation of the

27  FLSA; (3) restitution of unpaid overtime wages in violation of

28  California's Unfair Trade Practices Act; (4) restitution of

9

unpaid minimum wage in violation of California's Unfair Trade Practices Act; (5) failure to provide meal and rest periods in violation of Labor Code § 226.7; (6) equitable remedies and unpaid benefits; (7) breach of oral contract; and (8) equitable action for an accounting.  Defendant asserts that plaintiff has waived and agreed not to pursue his claims for violations of California's Unfair Trade Practices Act, breach of contract, and equitable action for an accounting; these claims constitute plaintiff's Third, Fourth, Seventh, Eight, and Ninth claims for relief.  Plaintiff did not dispute this assertion in his opposition.  Therefore, defendant's motion for summary judgment regarding plaintiff's Third, Fourth, Seventh, Eight, and Ninth claims for relief is GRANTED.  Moreover, in plaintiff's opposition, he concedes that he does not have a claim for meal or rest periods pursuant to Labor Code § 226.7, the basis for his Fifth claim for relief.  As such, defendant's motion for summary judgment regarding plaintiff's Fifth claim for relief is GRANTED.  Thus, the remaining claims at issue in this motion are plaintiff's claims based upon failure to pay overtime and minimum wage in violation of the FLSA and for equitable remedies and unpaid benefits.

**A.   Irrigation Exemption to the FLSA**

     Defendant contends that plaintiff is not entitled to the payment of overtime wages as set forth in the FLSA because plaintiff's employment falls within the "irrigation" exemption to the FLSA.  "The FLSA is construed liberally in favor of employees; exemptions 'are to be narrowly construed against the employers seeking to assert them.'  <u>Cleveland v. City of Los</u>

Angeles, 420 F.3d 981, 988 (9th Cir. 2005) (quoting Arnold v. Ben
Kanowsky, Inc., 361 U.S. 388, 392 (1960)); Dole v. West Extension
Irrigation Dist., 909 F.2d 349, 352 (9th Cir. 1990).  An FLSA
exemption will only be found to apply in contexts that are
"plainly and unmistakably within the given exemptions terms and
spirit."  Id.  Therefore, the District has the burden to
demonstrate that plaintiff meets each element of the irrigation
exemption and that plaintiff fits "plainly and unmistakably"
within the terms and spirit of the exemption.  See id.

     The irrigation exemption to the FLSA provides that the
maximum hour requirements of the FLSA shall not apply to

          any employee employed in agriculture or in connection
          with the operation of maintenance of ditches, canals,
          reservoirs, or waterways, not owned or operated for
          profit, . . .  and which are used exclusively for
          supply and storing of water, at least 90 percent of
          which was ultimately delivered for agricultural
          purposes during the preceding calendar year.

29 U.S.C. § 213(b)(12) (West 2007).  In order to carry their
burden on summary judgment, the District must show that there are
no disputed issues of material fact that: (1) plaintiff is
employed in connection with the operation or maintenance of
ditches, canals, reservoirs, or waterways; (2) the ditches,
canals, reservoirs, or waterways are not owned or operated for
profit; (3) the ditches, canals, reservoirs, or waterways are
used exclusively for supply and storing of water; and (4) at
least 90 percent of that water was ultimately delivered for
agricultural purposes during the preceding year.
/////
/////
/////

11

Plaintiff contends the Indian Valley Reservoir is not used exclusively for the storage and supply of water.[3]  Defendants do not dispute that the District uses the Reservoir for recreational facilities, to generate electricity, and for flood control. (Def.'s Reply, filed Sept. 14, 2007, at 5).  Rather, defendants contend that these alternate uses of the reservoir do not make the irrigation exemption inapplicable to plaintiff because the term "exclusive" in § 213(b)(12) does not pertain to the use and storage of water, but to the ultimate purpose for which the water was delivered in the previous year.

Section 213(b)(12) was amended in 1997.  Prior to that amendment, it read

> Any employee employed in agriculture or in connection with the operation or maintenance of ditches, canals, reservoirs, or waterways, not owned or operated for profit, or operated on a sharecrop basis and which are used exclusively for supply and storing of water ultimately delivered for agricultural purposes.

Dole, 909 F.2d at 350.  The only Ninth Circuit decision that addressed the term "exclusively" in the pre-1997 version of § 213(b)(12) is Dole v. West Extension Irrigation District.  Id. In Dole, the court held that where three percent of the defendant District's water was used for non-agricultural purposes, the irrigation exemption did not apply.  Id. at 351.  The court noted that while Congress could have based the exemption on other factors suggested by the defendant, it did not do so.  Id. Congress used the term "exclusively" in defining the exemption, and the Ninth Circuit gave that term "force."  Id.; see also

---

[3]    Plaintiff asserts that there are triable issues of fact as to all four of the elements that defendant must show.

1  <u>Sanders v. Elephant Butte Irrigation Dist. of New Mexico</u>, 112

2  F.3d 468 (10th Cir. 1997) (adopting the Ninth Circuit's rationale

3  and holding that the irrigation exemption did not apply to a

4  ditchrider employed by the defendant District whose water was

5  used for lawns, shrubbery, gardens, and orchards despite the

6  District's operating practices that purportedly prohibited such

7  non-agricultural use).

8      The 1997 amendment to § 213(b)(12) added the phrase "at

9  least 90 percent of which was ultimately delivered for

10  agricultural purposes during the preceding calendar year."  29

11  U.S.C. § 213(b)(12).  Subsequent to this amendment, the only

12  federal case to address the interpretation of the irrigation

13  exemption to FLSA is an unpublished decision from the Eastern

14  District of California, <u>Avila v. Turlock Irrigation District</u>,

15  2006 WL 3437549 (E.D. Cal. Nov. 27, 2006).  In <u>Avila</u>, the court

16  found that the 1997 amendment expanded the term "exclusively" to

17  mean that 90 percent, rather than 100 percent, of the water must

18  be delivered for agricultural purposes.  <u>Id.</u> at *14.  As such,

19  the court rejected plaintiff's argument that the exemption could

20  only be applied in circumstances where the ditches, canals,

21  reservoirs, or waterways were used exclusively for the supply and

22  storage and water and not for operation or maintenance of water

23  delivered or managed for other purposes.  <u>Id.</u> at *13.

24      Defendant contends that the court should adopt the same

25  statutory interpretation of § 213(b)(12) as the court in <u>Avila</u>.

26  Particularly, defendant asserts that the term "exclusively"

27  actually means 90 percent and refers only to the delivery

28  component of the exception.  Under this reading, defendant argues

13

1  that it is immaterial that the District uses water for

2  recreation, electricity, and flood purposes.

3       The court disagrees.  In amending section 213(b)(12),

4  Congress did not remove the term "exclusively" from the language

5  of the statute.  As such, the court must give this term force.

6  See Dole, 909 F.2d at 351.  By its definition, the term

7  "exclusively" cannot and does not mean 90 percent.  Therefore,

8  these two statutory terms cannot be conflated.  Section

9  213(b)(12) applies to ditches, canals, reservoirs, or waterways

10 "which are used exclusively for supply and storing of water."

11 Moreover, at least 90 percent of that water must ultimately have

12 been delivered for agricultural purposes in the preceding

13 calendar year.  A plain reading of the statute, giving force to

14 each of the terms set forth by Congress, demonstrates that the

15 term "exclusively" applies to the supply and storage component

16 while the "90 percent" applies to the delivery component.

17 Furthermore, the court's interpretation of the function of the

18 term "exclusively" in § 213(b)(12) narrowly construes the section

19 against defendant District.  See Arnold, 361 U.S. 388 at 392

20 (1960)); Cleveland, 420 F.3d at 988; Dole, 909 F.2d at 352 (9th

21 Cir. 1990).

22      Because it is undisputed that the Indian Valley Reservoir is

23 not used exclusively for supply and storing of water,[4] the

24

25      [4]  Defendant also contends that the Supreme Court of
   Arizona's decision in Wright v. Salt River Vally Water Users'
26 Ass'n. 94 Ariz. 318 (1963), is applicable to this case.  The
   court disagrees.  In Wright, the court rejected plaintiff's
27 argument that the irrigation exemption did not apply because
   parts of the dam produced electrical energy that was subsequently
28                                          (continued...)

14

application of the irrigation exemption to plaintiff is not plainly and clearly within the terms of § 213(b)(12).  Therefore, the irrigation exemption to the FLSA does not apply to this case.

In his opposition, plaintiff moved pursuant to Rule 56(f) for additional discovery relating to the 90 percent delivery component of the irrigation exemption.  In light of the court's finding that the irrigation exemption does not apply because the Indian Valley Reservoir was not used exclusively for the supply and storage of water, such discovery is unnecessary.  Therefore, plaintiff's motion for additional discovery is DENIED.

**B.   "Home Worker Exception" to the FLSA**

Defendant also contends that plaintiff's FLSA claims for overtime and minimum wage are precluded by the "home worker exception" set forth in 29 C.F.R. § 785.23.  This section provides, in relevant part

> An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. . . . It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into account all of the pertinent facts will be accepted.

29 C.F.R. § 785.23.  This section does *not* provide employers with an exception to the overtime pay requirements of the FLSA, but

---

[4](...continued)
sold.  The court noted that the plaintiff was solely engaged in the activity of an irrigation worker, and his activity "was not in the remotest sense related to the generation or distribution of electricity."  In this case, it is undisputed that, at the very least, plaintiff's job duties included activities relating to the recreational facility.  Moreover, the <u>Wright</u> court was interpreting the irrigation exemption to the FLSA prior to the 1997 amendment.

"simply offers a sound methodology of calculating how many hours the employees actually worked within the meaning of the FLSA." Brigham v. Eugene Water & Elec. Bd., 357 F.3d 931, 942 (9th Cir. 2004) (finding that the agreement between the parties was reasonable, but remanding to the district court to determine how much overtime each of the employees was owed for hours exceeding 40 in a given workweek); see Leever v. Carson, 360 F.3d 1014, 1017 & n.2 (9th Cir. 2004) (using the parties' nomenclature in stating that the regulation provides an exemption from the overtime pay requirement, but recognizing that it simply offers a methodology for calculating hours).   In order for this section to be applicable, the District has the burden of proving, "'plainly and unmistakably,' that (1) there was an agreement to compensate plaintiff for his overtime work; and (2) the agreement was 'reasonable,' having taken into account 'all of the pertinent facts.'"   Leever, 360 F.3d at 1018 (citing Brigham v. Eugene Water & Elec. Bd., 357 F.3d 931, 940 (9th Cir. 2004)).[5]

**1.   Existence of an Agreement**

Neither party disputes that there was no written employment contract between plaintiff and defendant.   However, defendant contends that there was a constructive agreement between the parties.   "A constructive agreement may arise if employees have been informed of the overtime compensation policy and continue to

---

[5]      Both plaintiff and defendant cite to the Ninth Circuit's decision in Berry v. County of Sonoma, 30 F.3d 1174 (9th Cir. 1994), for the relevant standard regarding the "home worker exception" to the FLSA.   However, the Berry court did not mention, let alone discuss, the "home worker exception."   Rather, the Berry court addressed whether on-call time could be considered compensable overtime under the FLSA.   Id. at 1180.

work under the disclosed terms of the policy." <u>Berry v. County of Sonoma</u>, 30 F.3d 1174, 1180 (9th Cir. 1994) (discussing the existence of an agreement in the inquiry into whether on-call hours were compensable under the FLSA); <u>Owens v. Local No. 169, Ass'n of W. Pulp and Paper Workers</u>, 971 F.2d 347, 355 (9th Cir. 1992); <u>see also</u> <u>Brigham</u>, 357 F.3d at 938.

In support of its contention that plaintiff had entered into a constructive agreement, defendant points to a memo dated September 21, 1995. (Ex. B. to Decl. of Bob Watson ("Watson Decl."), filed Sept. 6, 2007). This memo addresses the hours and compensation for damtenders, including plaintiff. Under the summary of consideration, the memo states that "IVR averages 8 hours per day annually." (<u>Id.</u>) The memo also states that "profit-sharing should off-set the estimated average time over 8 hours per day required providing camping [sic]." (<u>Id.</u>) While inarticulately phrased, the policy set forth in the memo provides that the District anticipated that plaintiff would work 8 hours per day and that any work performed by plaintiff exceeding 8 hours per day would be compensated by the profit-sharing.

Defendant also points to a memo dated February 8, 2002, addressing "Holiday Pay and Reporting Requirements." (Ex. A to Watson Decl.).[6] This memo pertains to the District's policies relating to overtime pay on holidays and provides (1) that only minimal work was to be done on holidays; and (2) that the

---

[6] Plaintiff does not dispute that he received notice of these policies; rather, he submits these memos as evidence in opposition to defendant's motion for summary judgment. Plaintiff has offered no evidence to contradict defendant's contention that he knew of the overtime policy and continued to work for the District as a damtender.

District anticipated that such tasks would require less than four hours of work a day.  The memo also directs plaintiff to call for authorization in advance of the extra working time, unless it is an emergency.

Therefore, prior to the relevant period at issue, which plaintiff identifies as April 2003-April 2006,[7] the District had informed plaintiff of its policies regarding anticipated hours and overtime both generally and with respect to holidays. Subsequently, plaintiff continued to work for defendant.  As such, there was a constructive agreement between plaintiff and defendant regarding his hours and compensation.  See Berry, 30 F.3d at 1180; see also Braziel v. Tobosa Dev. Servs., 166 F.3d 1061, 1063 (10th Cir. 1999) ("Although it is clear from the record and appellants' pleading that they became unhappy with the policy[,] it is equally clear that appellants understood and acquiesced to the policy when they were hired."); Bodie v. City of Columbia, 934 F.2d 561, 564-65 (4th Cir. 1991) ("[C]ontinuance in the job and acceptance under the new plan of payment was sufficient to create a valid agreement, even though the agreement was implied and not in writing.").

### 2.    Reasonableness of the Agreement

While defendant has demonstrated that there was a constructive agreement with plaintiff regarding overtime compensation, defendant must also demonstrate that the agreement was reasonable under § 785.23.  Leever, 360 F.3d at 1018.  The

---

[7]    See Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n"), filed Sept. 6, 2007, at 22) (stating that the relevant period was April 2003 through April 2006).

Ninth Circuit has recognized that apart from stating that "all
pertinent facts" should be taken into consideration, § 785.23
does not specify what facts are pertinent to the reasonableness
inquiry.  Id. at 1019.  However, the Ninth Circuit has held that,
"at a minimum, an agreement must take into account some
approximation of the number of hours actually worked by the
employee or that the employee could reasonably be required to
work."  Id.

Where an agreement explicitly instructs the employee not to
exceed a set amount of hours without prior approval, such an
agreement may be deemed reasonable as a matter of law.  Rudolph
v. Metropolitan Airports Commission, 103 F.3d 677, 684 (8th Cir.
1996); Leever, 360 F.3d at 1019 (discussing the Eighth Circuit's
decision in Rudolph with approval).  In Rudolph v. Metropolitan
Airports Commission, the Eighth Circuit held that the agreement
between the plaintiff employees and the defendant was reasonable,
despite the fact that the employees claimed to have regularly
worked in excess of the time for which they were paid.  103 F.3d
at 684.  The parties' agreement explicitly dictated the amount of
time the plaintiffs were to spend on their job duties and
specified that the plaintiff needed to obtain prior approval for
any additional time they thought necessary.  Id. at 683.  The
court reasoned that the defendant was entitled to rely on the
plaintiff to follow the clear terms of the agreement by not
performing additional work without prior approval.  Id. at 684.
Therefore, the court found the agreement reasonable as a matter
of law pursuant to § 785.23.  Id.
/////

19

1    With respect to the constructive agreement relating to
2  defendant's policy for hours and compensation on holidays, the
3  agreement was reasonable as a matter of law because defendant was
4  entitled to rely on the clear terms of the 2002 memo.  The 2002
5  memo provides that plaintiff needed to obtain prior approval for
6  any additional work time in excess of four hours that he thought
7  was necessary.  (Ex. A to Watson Decl.).  Like the defendant in
8  Rudolph, defendant District was entitled to rely on its explicit
9  direction that plaintiff was not to work more than fours hours on
10 holidays without prior authorization.  As such, the constructive
11 agreement with respect to holiday hours was reasonable.
12 Therefore, plaintiff is not entitled to back-pay for work
13 exceeding four hours that was not pre-approved by the District on
14 holidays.

15    However, with respect to the constructive agreement relating
16 to defendant's general policy for hours and compensation, there
17 is a triable issue of fact regarding whether the District took
18 into account the actual numbers of hours worked by plaintiff.
19 The 1995 memo estimates that plaintiff would work an average of
20 eight hours per day.  However, the memo also implicitly
21 contemplates that plaintiff might work more than eight hours per
22 day, for which he would be compensated by profit sharing.  The
23 memo does not mention how many more hours the District
24 anticipated plaintiff would work or how many more hours plaintiff
25 actually worked.  Nor has defendant presented evidence that it
26 made any inquiry into the numbers actually spent by plaintiff in
27 the performance of his duties.  See id. ("[T]he number of hours
28 actually worked is clearly 'pertinent' to the question of how

20

much compensation ought to be paid for that work."). While
defendant presents evidence that other workers who covered for
plaintiff did not work the hours that plaintiff asserts he did,
plaintiff also contends that these other employees did not
perform all of his duties. Moreover, with respect to non-holiday
hours, defendant did not require pre-approval for hours exceeding
a certain threshold. Cf. Rudolph, 103 F.3d 677. Therefore,
there is a triable issue of fact regarding whether the parties'
constructive agreement as to non-holiday hours was reasonable.
See Chao v. Jasmine Hall Care Homes, Inc., No. 05-1306, 2007 WL
2069932, at *5 (E.D. Cal. July 16, 2007) (denying defendants'
motion for summary judgment based in part on § 785.23 because
there were genuine issues of material fact concerning, *inter
alia*, how many hours the employees actually worked, what was
expected of them under the agreement, and how much knowledge
defendants had of any alleged overtime).

Furthermore, pursuant to the 1995 memo cited by defendants,
plaintiff was expected to work an average of 8 hours per day
annually. Section 785.23 merely offers a methodology for
calculating how many hours plaintiff actually worked. If that
number exceeds 40 (and in this case, the average anticipated
hours was 56 per week), "the additional hours must be paid at the
time-and-a-half rate demanded by 29 U.S.C. § 207(a)." Brigham,
357 F.3d at 942. Under Ninth Circuit precedent, even if the
agreement is reasonable, a determination of the overtime payment
owed is still required.

Therefore, defendant's motion for summary judgment regarding
plaintiff's claim for back-pay for overtime hours worked on

holidays is GRANTED.  Defendant's motion for summary judgment based on the applicability of § 785.23 regarding plaintiff's claim for back-pay for overtime hours actually worked[8] on non-holidays is DENIED.

**C.   Compensability of "On-Call" Time**

Defendant further contends that plaintiff's claims for overtime and minimum wage fail because his time spent "on-call," when he was not actively engaged in duties for the District, is not compensable under the FLSA.  Whether an employee was "engaged to wait," which is compensable, or "waiting to be engaged," which is not compensable, must be determined by the circumstances in a given case.  Brigham, 357 F.3d at 935 (quoting Owens, 971 F.2d at 350).  The two predominant factors in deciding whether on-call waiting time is compensable overtime are (1) the agreements between the parties; and (2) the degree to which the employee is free to engage in personal activities.  Berry, 30 F.3d at 1180 (citing Owens, 971 F.2d at 350).  Whether there is an agreement between the parties that employees would receive compensation for on-call waiting time is a question of fact.  Id.  "[W]hether the limitations on the employees' personal activities while on-call are such that on-call waiting time would be considered compensable overtime under the FLSA is a question of law."  Id. (citing Birdwell v. City of Gadsen, Ala., 970 F.2d 802, 807 (11th Cir. 1992)).

/////

---

[8]   For the reasons set forth *infra*, plaintiff's claim for back-pay for hours that he was on-call, but not actively working are not compensable.

22

The inquiry regarding the first predominant factor, the agreement between the parties, is significant to the extent that the terms of the agreement may assist the trier of fact in determining whether the parties characterized the time spent waiting on-call as actual work. Berry, 30 F.3d at 1181. However, such agreements are not controlling as to the character of the uncompensated time at issue. Id.

In this case, as set forth above, the undisputed evidence demonstrates that there was a constructive agreement between plaintiff and defendant regarding hours and compensation. However, nothing in the agreement plainly addresses on-call waiting time or whether such time was compensable.[9] Therefore, the constructive agreement between the parties does not weigh in favor or against the conclusion that on-call waiting time is compensable.

The proper inquiry regarding the second predominant factor, the degree to which an employee is free to engage in personal activities, is "whether an employee is so restricted during on-call hours as to be effectively engaged to wait." Berry, 30 F.3d at 1182. In Owens, the Ninth Circuit "enumerated an illustrative list of factors to consider in gauging the extent to which employees could pursue personal activities during the course of their on-call shifts." Brigham, 357 F.3d at 936 (quoting Owens, 971 F.2d at 351). Such factors include:

---

[9]     Because the 1995 memo provides that the IVR damtender works an average of 8 hours per day, it is likely that this time did not include on-call time. However, the court cannot make such an inference as to a question of fact on a motion for summary judgment.

23

1   (1) whether there was an on-premises living
requirement; (2) whether there were excessive
2   geographical restrictions on employee's movements; (3)
whether the frequency of calls was unduly restrictive;
3   (4) whether a fixed time limit for response was unduly
restrictive; (5) whether the on-call employee could
4   easily trade on-call responsibilities; (6) whether the
use of a pager could ease restrictions; and (7) whether
5   the employee had actually engaged in personal
activities during call-in time.

6

7 Id. at 936.  No one factor is dispositive, and the court "should

8 balance the factors permitting personal pursuits against the

9 factors restricting personal pursuits to determine whether the

10 employee is so restricted" that waiting time should be

11 compensated.  Id.  Although the limitations on personal

12 activities inquiry is a question of law, on a motion for summary

13 judgment, where there is a genuine dispute relating to the facts

14 relevant to these factors, the court will accept plaintiff's

15 version of the facts.

16   Plaintiff was required to be on the Indian Valley Reservoir

17 premises every day, unless he took vacation or sick leave (factor

18 1).  Plaintiff was subject to some geographic constraints (factor

19 2); he had to respond to the hydro-electric unit alarms within

20 thirty minutes.  (DUF ¶ 68; Pl.'s Opp'n at 21).  Further, when

21 campers were at the facility, he had to respond immediately to

22 their needs (factor 4).  (DUF ¶ 78).  As such, plaintiff left the

23 premises less than once per week.  (DUF ¶ 81).  Plaintiff

24 contends that a pager would do little to lessen the burdens of

25 his duties because of the remote location of the Indian Valley

26 Reservoir and because he was often the only employee present

27 (factor 6).

28 /////

1    However, it is undisputed that there are many days

2    throughout the year where there are no campers present at the

3    facility.  (PUF ¶ 53).  As such, during those times, there was no

4    need for plaintiff to respond immediately to the needs of campers

5    (factors 3 and 4).  (PUF ¶ 52).  Moreover, when plaintiff was

6    injured and his wife was sick, other employees were able to

7    perform the damtender duties (factor 5).  Estella Watson

8    performed the damtender duties when plaintiff was injured.  (PUF

9    ¶ 70).  John Pettus filled in for plaintiff for approximately

10   four months.  (PUF ¶ 71).  In 2006, O'Halloran worked for two

11   weekends as the damtender at the facility.  (DUF ¶ 84).

12       Furthermore, the undisputed evidence demonstrates that

13   plaintiff was able to engage in personal activities when he was

14   on call (factor 7).  Between 2003 and 2007, plaintiff made many

15   improvements to the damtender residence, including installing

16   cabinets and countertops, relocating the laundry room,

17   constructing closets, building a fence to create a front yard,

18   constructing a storage building, and planting trees.  (PUF ¶ 49).

19   Plaintiff was free to have visitors and would have time to talk

20   to them during the day for up to an hour; plaintiff's

21   grandchildren would visit once a week or once a month.  (PUF ¶¶

22   61-62).  Plaintiff built a bar for a friend over a period of five

23   days, spending four to five hours per day on the project.  (PUF ¶

24   63).  Plaintiff also built decking with friends.  (PUF ¶ 63).

25   For approximately a year and a half, plaintiff kept horses at the

26   facility in a pen adjacent to the house; he fed the horses twice

27   a day, picked up after them, and exercised them.  (PUF ¶¶ 65-66).

28   Plaintiff also captured wild pigs and was hoping they would

breed.  (PUF ¶ 67).  Plaintiff and a friend would go ATV hunting

for an hour or two.  (PUF ¶ 68).  On occasion, plaintiff did

leave the facility in the late afternoon or evening.  (DUF ¶ 81).

On balance, the <u>Owens</u> factors weigh against finding that

plaintiff's on-call time was compensable.  The response-time

restrictions placed on plaintiff were not particularly severe;

there were many times during the year when plaintiff did not need

to immediately respond to the needs of campers.  Plaintiff also

had a half hour to respond to the hydro-electric unit alarms.

<u>See Berry</u>, 30 F.3d at 1184 (finding on-call time not compensable

where employees required to remain in the county and to respond

to calls within fifteen minutes); <u>Owens</u>, 971 F.2d at 349 (finding

on-call time not compensable where employees required to reply

within ten minutes of receiving a call or page).  Further, there

is no evidence that plaintiff's duties put him in the position of

being responsible for the safety of thousands of people and thus,

required him to be both immediate and absolutely prepared in his

responses.  <u>Cf.</u> <u>Brigham</u>, 357 F.3d at 938 (finding that the <u>Owens</u>

factors weighted narrowly in favor of the employees were they

were subject to the constant pressures of being absolutely

prepared to respond to emergencies where the safety of thousands

was at stake).  Moreover, while plaintiff was required to live at

the facility and was subject to geographic constraints, the

undisputed evidence demonstrates that he engaged in a variety of

personal pursuits including home improvement, construction

projects, having visitors, raising horses, capturing wild pigs,

and ATV hunting.  As such the record does not demonstrate that

plaintiff's on-call time "was so restricted that it could not be

26

1  used for personal activities."  <u>Serv. Employees Int'l Union Local</u>

2  <u>102 v. County of San Diego</u>, 60 F.3d 1346, 1355 (9th Cir. 1994)

3  (concluding that requiring a park ranger to be on-call at night

4  to respond to inquiries and enforce park rules was not so

5  restrictive that on-call time could not be used for personal

6  activities).

7       Based upon the foregoing analysis of the <u>Owens</u> factors,

8  plaintiff was not "so restricted during on-call hours as to be

9  effectively engaged to wait."  <u>Berry</u>, 30 F.3d at 1182.

10  Therefore, and because the constructive agreement between the

11  parties holds no weight in this analysis, plaintiff's time spent

12  "on-call" is not compensable under the FLSA.  As such,

13  defendant's motion for summary adjudication on this issue is

14  GRANTED.

15       However, although plaintiff's time not spent actively

16  working is not compensable under the FLSA, there is a genuine

17  issue of fact regarding how many hours plaintiff was on-call and

18  how many hours plaintiff actually worked.[10]  Therefore,

19  defendant's motion for summary judgment regarding plaintiff's

20  /////

21

22       [10]  Defendant contends that plaintiff's own assertions
    regarding the amount of hours he worked is insufficient evidence
23  for his FLSA overtime claim.  The court disagrees.  Defendant
    cites <u>Hearnsberger v. Gillespie</u>, 435 F.2d 926 (8th Cir. 1970) in
24  support of its contention.  <u>Hearnsberger</u> is inapposite.  In
    <u>Hearnsberger</u>, the case was dismissed after the court made certain
25  findings *after trial*.  <u>Id.</u>  On a motion for summary judgment, the
    court cannot weigh the evidence or make credibility
26  determinations; it is sufficient that "the claimed factual
    dispute be shown to require a jury or judge to resolve the
27  parties' differing versions of the truth at trial."  <u>First Nat'l</u>
    <u>Bank</u>, 391 U.S. at 289.  Thus, plaintiff's assertions are
28  sufficient to demonstrate a triable issue of fact.

1  FLSA overtime claims based on non-holiday hours actually worked
2  by plaintiff is DENIED.

3  **D.   Minimum Wage**

4       Defendant contends that summary judgment should be granted
5  as to plaintiff's minimum wage claim because, even assuming
6  plaintiff worked every waking moment, his hourly wage is still in
7  excess of the applicable federally mandated minimum wage of
8  $5.15.  <u>See</u> 29 U.S.C. § 206 (2004); (Compl. ¶ 63).  Plaintiff
9  fails to offer any argument in opposition to defendant's
10 assertion.[11]

11      One effect of the FLSA was "to raise substandard wages first
12 by a minimum wage."  <u>Hodgson v. Baker</u>, 544 F.2d 429, 432 (9th
13 Cir. 1976) (quoting <u>Overnight Motor Transp. Co., Inc. v. Missel</u>,
14 316 U.S. 572, 577 (1942)).  An employee's regular rate of pay is
15 calculated by dividing the employee's salary by the number of
16 hours worked.  <u>Id.</u> at 433; <u>see</u> 29 C.F.R. § 548.3 (West 2007).
17 Overtime is then assessed by calculating time and one-half of
18 that regular rate.  <u>Id.</u>; <u>see</u> 29 C.F.R. § 548.3.

19      As set forth above, plaintiff's on-call time (such as when
20 he was sleeping) is not compensable.  Assuming plaintiff was
21 actively working from 5:00 a.m. to 11:00 p.m. every day, seven
22 days a week, (<u>see</u> DUF ¶¶ 3, 22; Pl.'s Opp'n at 23), plaintiff
23 worked approximately 540 hours a month (18 hours/day x 30 days =

24
25
26

27      [11]   Plaintiff's silence could be construed as a non-
opposition to defendant's motion regarding his minimum wage
28 claims.  However, in an abundance of caution, the court analyzes
the merits of defendant's argument.

540 hours/month).[12]  Plaintiff alleges that he was paid $2,800

per month.  Assuming that defendant did not pay overtime, as

plaintiff contends, this equates to an hourly wage of

approximately $5.19 per hour.  This is in excess of the federally

mandated minimum wage of $5.15.  Therefore, defendant's motion

for summary judgment regarding plaintiff's Second claim relief

that defendant failed to pay minimum wage in violation of the

FLSA is GRANTED.

**E.    Willful Conduct by Defendant**

Defendant contends that summary judgment should be granted

on plaintiff's claim that the District willfully violated the

FLSA.  All causes of action brought under the FLSA must generally

be commenced within two years after the action's accrual date.

29 U.S.C. § 255(a).  However, "[i]f a particular employer's

conduct embodies [a] 'willful violation' of [the] FLSA, 29 U.S.C.

§ 255(a) permits extension of the FLSA's standard two-year

statute of limitations to a three-year period." Alvarez v. IBP,

Inc., 339 F.3d 894, 908 (9th Cir. 2003).  For purposes of the

statute of limitations under § 255(a), "willfulness" means that

"the employer knew or showed reckless disregard for the matter of

whether its conduct was prohibited by the statute." McLaughlin

v. Richland Shoe, 486 U.S. 128, 133 (1988).

/////

---

[12]    If the court modeled its formula upon the one set forth
by plaintiff in the complaint (Compl. ¶ 61), by calculating on a
weekly basis and estimating four weeks in a month, he would have
worked approximately 504 hours/month (18hr/day x 7days/wk x 4
wk/month = 504 hrs/month).  Therefore, his hourly pay would be
approximately $5.55.  However, because it is more favorable to
plaintiff, the court calculates his monthly hours by using a 30
day month.

1    Plaintiff has proffered evidence that in November 2003,

2  defendant hired consultant who expressed concerns about whether

3  plaintiff was exempt under the FLSA.  The consultant's report

4  recommended that the position be evaluated for FLSA exemptions,

5  appropriateness of total compensation, and overtime liability.

6  The proffered evidence also demonstrates that despite the

7  consultant's concerns, the District never adopted any of the

8  recommendations.  As such, there is a triable issue of fact

9  regarding whether defendant knew or showed reckless disregard for

10  whether its conduct violated the FLSA.  Therefore, defendant's

11  motion for summary judgment regarding plaintiff's claim of

12  willfulness is DENIED.

13  **F.    Additional Retirement Benefits**

14    Finally, defendant moves for summary judgment on plaintiff's

15  equitable claim that he is entitled to additional retirement

16  benefits.  Apart from its contention that plaintiff's claims for

17  overtime must fail on the merits, the District contends that

18  plaintiff must first contact the Plan administrator regarding the

19  procedures for pursuit of any claims he may have.  Plaintiff does

20  not dispute that he must contact the Plan administrator regarding

21  the proper process if he prevails in his claim for back pay for

22  overtime.  Rather, plaintiff contends that he is not required to

23  act in anticipation of receiving an accounting or equitable award

24  in this case.  The court agrees.

25    Through his claim for equitable relief, plaintiff is

26  requesting a determination of the hours worked for which he

27  claims he was not credited or paid.  Plaintiff does not dispute

28  and, therefore the court need not adjudicate, that if plaintiff

prevails, he must comply with the procedures set forth in the Plan for obtaining proper credit under the District's Money Purchase Pension Plan.  As such, defendant's motion for summary judgment regarding plaintiff's Fifth claim for relief seeking equitable remedies is DENIED.

**CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment is GRANTED in part and DENIED in part:

(1)  Defendant's motion for summary judgment regarding plaintiff's Second, Third, Fourth, Fifth, Seventh, Eighth, and Ninth claims for relief is GRANTED.

(2)  Defendant's motion for summary judgment regarding plaintiff's claim for back-pay for overtime hours worked on holidays is GRANTED.

(3)  Defendant's motion for summary adjudication on the issue of whether plaintiff's on-call time is compensable is GRANTED.

(4)  Defendant's motion for summary judgment regarding plaintiff's FLSA overtime claims based on non-holiday hours actually worked by plaintiff is DENIED.

(5)  Defendant's motion for summary judgment regarding plaintiff's claim of willfulness is DENIED.

(6)  Defendant's motion for summary judgment regarding plaintiff's claim for equitable remedies pertaining to his retirement benefits is DENIED.

/////
/////
/////

31

IT IS SO ORDERED.

DATED: October 17, 2007

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE